**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Kathleen Kelly Meixner,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-00323-TUC-JCH<br><br>**ORDER** |

Plaintiff Tammy Meixner ("Meixner") brought this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) This matter was referred to United States Magistrate Judge Lynnette C. Kimmins for Report and Recommendation ("R&R"). (Doc. 13.) On December 8, 2021, Magistrate Judge Kimmins issued her R&R finding that the ALJ committed legal error and recommending that this Court reverse the final decision of the Commissioner and remand for the immediate calculation and payment of benefits. (Doc. 29 at 15–16.) The Commissioner objects to Judge Kimmins' recommendation. (Doc. 30 at 7–10.) As explained below, the Court **overrules** the Commissioner's objection and **adopts** in full the R&R.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Meixner alleges disability beginning August 8, 2016 due to "anorexia nervosa, depression, anxiety, obsessive-compulsive disorder (OCD), post-traumatic stress disorder (PTSD), a history of hypothyroidism, and degenerative disc disease." (AR at 19.) She also

suffers from chronic headaches and inflammatory bowel disease. (AR 924–25, 1088.)

On August 19, 2019, the ALJ's decision concluded that Meixner was not disabled within the meaning of the Social Security Act. ("SSA") (AR 16–30.) To be found disabled and qualified for Disability Insurance Benefits or SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a) & 1382(a)(3)(A). The same five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140–142 (1987). The five-step process requires the claimant to show (1) she has not worked since the alleged disability onset date, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from doing her past work. If at any step the Commissioner determines that a claimant is or is not disabled, the inquiry ends. If the claimant satisfies her burden though step four, the burden shifts to the Commissioner to show at step five that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *see also Bowen*, 482 U.S. at 146 n. 5 (describing shifting burden at step five).

In this case, the ALJ found at step one that Meixner had not engaged in substantial gainful activity during the relevant period. (AR at 19.) At step two, the ALJ found Meixner had "severe"[1] impairments of anorexia nervosa, depression, anxiety, OCD, PTSD, history of hypothyroidism, and degenerative disc disease.[2] (AR at 19.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R., Pt 404, Subpt. P, App. 1. (AR at 23.) Between steps three

---

[1] An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).
[2] As the R&R notes, chronic fatigue syndrome was consistently diagnosed by Meixner's treating physicians, although the ALJ did not find it to be a severe impairment at Step Two.

- 2 -

and four, the ALJ determined Meixner had the Residual Functional Capacity[3] ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). (AR at 21.) At step five, and based on the RFC and the testimony of the vocational expert ("VE"), the ALJ concluded Meixner could work as a housekeeper, fast food worker, or janitor, and therefore was not disabled. (AR at 29.) Accordingly, the ALJ concluded that Meixner was not disabled since August 8, 2016, the date she filed her application. (AR at 31.) Meixner requested review before the Appeals Council, which was denied on May 29, 2020, thereby making the ALJ's decision the final decision of the Commissioner. (AR at 1.) Thereafter, Meixner timely filed the instant action. (Doc. 1.)

Judge Kimmins issued her R&R and found that the ALJ committed legal error on two grounds. (Doc. 29.) First, the R&R found that the ALJ failed to articulate legally sufficient reasons for discounting Meixner's symptom testimony. (Doc. 29 at 4.) Second, the R&R determined that the ALJ improperly discounted the opinions of both Meixner's treating physicians, Drs. Bessette and Coull. (Doc. 29 at 12.) After finding that the ALJ committed harmful legal error, Judge Kimmins concluded that the requirements of the Ninth Circuit's credit-as-true rule were met and recommended remand for an award of disability benefits. (Doc. 29 at 15–16.)

The Commissioner objects to the R&R and asserts that the ALJ provided legally sufficient reasons to discount both the symptom testimony, (Doc. 30 at 3), and the treating physicians' opinions (Doc. 30 at 6). Moreover, the Commissioner argues that Judge Kimmins misapplied the credit-as-true rule's requirement, specifically by finding that no serious doubt exists as to whether Meixner is disabled in the face of purported inconsistencies in the record. (*See* Doc. 30 at 7.) As such, the Commissioner argues that if this Courts finds the ALJ committed legal error, then the matter should be remanded for further proceedings. (*Id.*)

---

[3] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). A plaintiff's residual functional capacity is what he can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5–7 (9th Cir. 1989).

## II. STANDARD OF REVIEW

### A. REVIEW OF THE REPORT AND RECOMMENDATION

In reviewing a Magistrate Judge's R&R, "[a] judge of the court shall make a de novo determination of those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

### B. REVIEW OF THE ALJ'S DECISION

An ALJ's decision may be reversed only when it is not supported by substantial evidence or constitutes harmful legal error. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) *citing Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination[.]'" *Treichler v. Comm'r of Soc., Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2015) (internal citation and quotation omitted). Put differently, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1004, 1115 (9th Cir. 2012) (internal quotation marks and citations omitted), *superseded by regulation on other grounds*.

## III. ANALYSIS

### A. SYMPTOM TESTIMONY

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. § 404.1529(b). If the claimant has presented such evidence, the ALJ proceeds to consider "all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant]," her doctors, and other persons to determine the persistence and intensity of these symptoms. *See* 20 C.F.R §

404.1529(c)(1). If there is no evidence of malingering, as here, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons that are supported by substantial evidence. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Here, the ALJ determined that Meixner's symptom testimony was inconsistent with the medical evidence or other record evidence. (AR at 22.) Specifically, the ALJ found: (1) Meixner's treatment was not what would be expected for chronic fatigue; (2) although Meixner's history of mental health indicated some work-related restrictions, the record did not establish limitations greater than those found in the decision; (3) the treatment records regarding Meixner's neck and back pain demonstrate that she is not precluded from performing light work; and (4) Meixner's chronic fatigue was inconsistent with her active lifestyle. (AR at 22–25.) The R&R disagreed and found that the ALJ failed to articulate legally sufficient reasons for discounting Meixner's symptom testimony as to all four reasons.[4] (Doc. 29 at 4.)

Because the ALJ found no evidence of malingering, she could only discount Plaintiff's testimony by providing specific, clear, and convincing reasons. *Vasquez*, 572 F.3d at 591. Specifically, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – general findings are insufficient." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (internal citation and quotation omitted); *see Lambert*, 980 F.3d at 1277 (finding insufficient the ALJ's "boilerplate statement" that the claimant's symptom testimony was "not entirely consistent

---

[4] The Commissioner objects to three out of the four R&R findings as to symptom testimony. (*See* Doc. 30 at 3–6.) She did not object to the finding involving Meixner's neck and back pain, (*See* Doc. 30 at 3–6), where the R&R concluded

> Meixner offered no symptom testimony that she was unable to perform light exertion work for a period of time. Rather, her symptom testimony is focused on her ability to sustain <u>any</u> task for a full workday, due to fatigue and impaired cognition. Although Meixner may be able to perform at the exertional level of light work for some length of time, that is not a basis to reject any of her symptom testimony.

(Doc. 29 at 8) (emphasis included in original).

with the objective medical evidence"). The Commissioner raises three arguments in support of her objection.

### 1. TREATMENT HISTORY: CHRONIC FATIGUE

The ALJ found that Meixner's treatment was not what would be expected to treat chronic fatigue. (AR at 23.) The Commissioner argues that the ALJ "reasonably inferred that the lack of treatment showed her symptoms were not as disabling as she alleged" as there "are several types of treatment including medication and therapy to relieve [chronic fatigue syndrome] symptoms." (Doc. 29 at 5.) However, as noted in the R&R, the ALJ neither identified what she considered to be "the expected treatment," nor did she cite any record evidence that Meixner failed to seek or follow any treatment advice from her doctors related to chronic fatigue. (Doc. 29 at 6.) Although a conservative course of treatment may undermine allegations of debilitating pain, it is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir.2007). The ALJ's conclusion that Meixner failed to obtain an unspecified and unprescribed treatment, absent a medical finding or opinion in the record urging such treatment, is the type of speculative explanation our circuit prohibits. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

### 2. OBJECTIVE MEDICAL EVIDENCE: MENTAL HEALTH TREATMENT

With regard to Meixner's mental health limitations, the Commissioner argues that the ALJ properly discounted her testimony by sufficiently referring to objective evidence which discounted Meixner's alleged difficulty with memory and concentration. (Doc. 30 at 3.) The R&R found that the "[ALJ] offered a partial summary of the record related to Meixner's mental health treatment followed by a conclusory finding that she was only as limited as the RFC." (Doc. 29 at 7.) Further, the R&R noted the single instance where the ALJ directly linked an objective finding to specific symptom testimony, specifically, the cognitive tests completed at the University of Arizona Center for Neurology in 2017 which did not support Meixner's reported difficult with concentration and memory. (Doc. 29 at

7; AR at 24; AR at 926-28.) In fact, the ALJ bolstered her decision by also citing to a 2015 cognitive test which showed only mild difficulties in attention and concentration (Doc. 30 at 4; AR 23; AR 380) and a 2016 treatment record which documented intact concentration and memory (Doc. 30 at 4; AR at 24; AR at 1019).[5]

While the ALJ sufficiently linked objective evidence to Meixner's testimony, *as to concentration and memory*, she failed to provide specific, clear, and convincing reasons for discounting Meixner's *other mental health testimony*. As the R&R notes, the same 2017 testing still evidenced poor cognition by Meixner. (*See* AR at 28 ("The Patient is still not performing well on cognitive testing").) Moreover, the ALJ was clearly aware of Meixner's other mental health impairments, as evidenced by the decision's recitation of the mental health treatment sought by Meixner over the course of several years. This included an observation of a "real psychopathology" coupled with a recommendation for medication management and extensive psychotherapy in 2016, the presence of possible psychological issues noted in 2017, and a medication regime including Klonopin and Trazedone beginning in 2018. (AR at 24.) The objective medical evidence, as noted in the ALJ's decision, belies the ALJ's ultimate assertion that there is "very little evidence of mental health treatment in the record." (*Id.*)  As such, the ALJ failed to provide specific, clear, and convincing reasons to discount Mexiner's symptom testimony as to her other mental health treatment.

**3. REPORTED ACTIVITIES**

Next, the Commissioner contends that the ALJ reasonably found that Meixner's activities were inconsistent with her allegations of disabling symptoms. (Doc. 30 at 5.) A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Fair*

---

[5] Despite Plaintiff's characterization, this observation does not constitute an improper post hoc rationalization given that it is offered not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n. 3 (9th Cir. 2006).

*v, Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Here, Meixner's activities included preparing simple meals, performing light chores, washing laundry, attending weekly therapy, driving, shopping, reading, talking on the phone, spending time with her husband, participating in yoga, managing her own finances, feeding and walking her dogs and horse, and grooming and riding her horse. (Doc. 30 at 5; AR at 25; AR at 618; AR at 735.) Meixner argues that the ALJ failed to connect these activities to any reasons to disbelieve her reported symptoms. (Doc. 33 at 9.) The R&R similarly found the ALJ, in discounting Meixner's symptom testimony, failed to explain how the particular activities cited were inconsistent with the symptom testimony offered. Moreover, the R&R found the ALJ failed to consider nuances and qualifications within Mexiner's testimony as to the extent, frequency, and timing with which Meixner engaged in such activities. (Doc. 29 at 8–10.) The R&R also found that the ALJ failed to consider the nature of chronic fatigue syndrome which presented in different ways: in some instances Meixner attempted to complete at least one activity each day, but as a result, she would nap for approximately four hours in the afternoon; whereas in other instances she would be bedridden for an entire day. (Doc. 29 at 9; AR at 57.)

In her objection, the Commissioner argues that Plaintiff's wide range and nature of activities were proper grounds for discrediting her testimony to the extent that they contradict claims of a totally debilitating impairment. (Doc. 30 at 5–6.) The Commissioner relies in-part on *Molina v. Astrue*, 674 F.3d at 1113. *Molina* involved a plaintiff who testified that she was incapable of being around people without suffering debilitating panic

- 8 -

attacks. *Id.* The Ninth Circuit found the ALJ reasonably concluded that certain activities, including, "walking her two grandchildren to and from school, attending church, shopping, and taking walks" undermined her symptom testimony. *Id.* In particular, her activities involved a degree of human interaction that was analogous to that required by her past relevant work environment where she worked in a large room occupied by only four or five other people, with whom she did not generally need to interact. *Id.*

Unlike *Molina*, here the ALJ did not indicate how such activities were transferable to Meixner's work conditions as to the asserted limitations. Moreover, the ALJ relied on activities that did not consume a substantial part of Meixner's day. Although the Commissioner offers her interpretations, including that Meixner's ability to drive and manage her finances negate disabling cognitive limitations, (Doc. 30 at 6), this rationalization stands in contrast to the conclusion offered by the ALJ: "[Mexier's activity] indicates to the undersigned that the claimant not only retains the ability to care for herself, but she is also able to care for the needs of others as well." (AR at 25.) The ALJ did not link the specific activities to a work setting, and as such, she did not provide specific, clear, or convincing reasons to reject Meixner's symptom testimony.

### 4. OTHER VALID REASONS

The Commissioner does not dispute that the ALJ failed to make specific findings about which parts of Meixner's testimony was supported or unsupported by the record. (Doc. 30 at 3.) Citing to the unpublished opinion in *Garza v. Astrue*, the Commissioner argues, however, that even if some of the ALJ's reasons are unsupported, the ALJ's findings should be upheld because it is supported by "other valid reasons."[6] 380 Fed.Appx. 672, 674 (9th Cir. 2010) (unpublished). The Commissioner's argument is unavailing.

The Commissioner cites to *Garza* for the proposition that a credibility finding may be upheld where three of the five reasons the ALJ considered were invalid. 380 Fed.Appx.

---

[6] In furtherance of this argument, the Commissioner also "reasserts the argument in her Answering Brief…" (Doc. 30 at 3 n. 1.) This is improper as objections are not a second opportunity to present the argument already considered by the Magistrate Judge. *Oslin v. Comm'r of Soc. Sec.*, No. 15-14126, 2017 WL 875299, at *1 (E.D. Mich. Mar. 6, 2017) (internal quotation and citation omitted).

at 674. However, *Garza* involved many circumstances not found here, including a lack of objective medical evidence, contradictions between *Garza's* testimony and the medical record, and contradictions between *Garza's* purported symptoms and her own treating physician's opinion. *Id.* Because the ALJ's conclusions in *Garza* were based on substantial evidence in the record, any potential error was rendered harmless. *Id.* at 673.

In sum, the ALJ erred by failing to identify specific, clear, and convincing reasons, supported by substantial evidence, to reject Meixner's symptom testimony. The Commissioner's first objection is overruled.

### B. TREATING PHYSICIANS' TESTIMONY

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester*, 81 F.3d at 830. Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995).

If the ALJ gives a treating physician's opinion less than controlling weight, the ALJ must comply with two requirements. First, the ALJ must consider all of the following factors in deciding the weight to give any medical opinion: (1) length and frequency of the examining relationship; (2) nature and extent of the treatment relationship; (3) supportability and whether the medical opinion includes supporting explanations and relevant evidence such as laboratory findings; (4) consistency with the record as a whole; (5) physician specialization and; (6) other factors. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The

failure to consider these factors constitutes reversible error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Where, as here, there is conflicting medical evidence, the ALJ's decisions must be grounded in specific and legitimate reasons supported by substantial evidence in the record. S*ee Lester*, 81 F.3d at 830 (internal quotation omitted).

Treating physicians, Mark Bessette, M.D., and Bruce Coull, M.D., submitted medical source statements on Meixner's behalf: Dr. Bessett submitted statements from December 2016, September 2017, February 2019, and April 2019; and Dr. Coull submitted statements from June 2016, December 2016, November 2017, and April 2019. (AR at 26.) Both Dr. Bessette and Dr. Coull opined that as a result of her impairments, Meixner could not work an 8-hour day and would be expected to miss work at least 5 days per month based on her ability to perform work-related activities. (AR 917–18; 924–25; 1074–75; 1086–87; 1088–89.) Both physicians noted Meixner's headaches, irritable bowel syndrome, and severe fatigue, (AR 924; 1085; 1088), and ultimately opined that she was permanently unable to work (AR 670; 672; 1086). The ALJ found the opinions of Meixner's two treating physicians "less persuasive" while giving "partial weight" to the opinions of the non-examining state physicians. (*See* AR 26–27).

The ALJ specifically noted that the limitations set forth by Dr. Bessette would, if accepted, result in a conclusion of disability. (AR at 26.) However, citing purported inconsistencies, the ALJ ultimately afforded "little to the opinions of Dr. Bessette and Dr. Coull." (*Id.*) The R&R found the ALJ did not identify any specific internal inconsistencies or inconsistencies between the treating physicians' opinions. (Doc. 29 at 12.) The Commissioner does not dispute the ALJ failed to identity any specific inconsistency, but urges the Court to infer internal inconsistencies, inconsistencies with Meixner's course of treatment,[7] and inconsistencies with Meixner's reported activities, based on the ALJ's discussion. (Doc. 30 at 6.)

### 1. INTERNAL INCONSISTENCIES

Inconsistency between a treating physician's opinion and medical evidence in the

---

[7] The Commissioner refers to "inconsistencies with Plaintiff's course of treatment," but fails to offer argument to support this conclusory objection. (*See* Doc. 30 at 6.)

- 11 -

record can be a specific, legitimate reason to discount the treating physician's opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). But to discredit a treating physician's opinion as a result of inconsistency with the medical record, the ALJ must identify the specific notes establishing the inconsistency and set forth particularized reasons why her interpretations are more correct than the treating doctor's. *See Stewart v. Colvin*, 575 F. App'x 775, 777 (9th Cir. 2014). In doing so, the ALJ cannot selectively isolate and cherry-pick notes but must consider the whole record. *See Martinez v. Berryhill*, 721 F.App'x 597, 599 (9th Cir. 2017) (finding that the ALJ improperly isolated two treatment notes rather than considering the treatment records as a whole); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding that the ALJ cannot cherry-pick portions of the record to support a conflict with the treating physician's opinion).

The Commissioner first urges consideration of the ALJ's observations that Dr. Coull noted Meixner had "no major restrictions" yet opined that she should not do tasks which required concentration, memory, or repetitive physical activity and would miss more than five days of work per month. (Doc. 30 at 6–7 ("Even if the ALJ did not specifically note this was an inconsistency, it is reasonable to infer that the ALJ considered the doctor's opinion to be internally inconsistent because she mentioned it within the same paragraph as other inconsistencies."); AR at 26; AR at 628.) Meixner correctly argues that the Commissioner does not attempt to provide a description of activities that would contrast with the physicians' assessment regarding her ability to perform in a work environment on a regular and continuing basis. (Doc. 33 at 4–5.) To infer an inconsistency, based solely on an isolated commented from Dr. Coull's 2016 report, would impermissibly disregard the treatment records as a whole and supplement a basis which the ALJ did not rely upon.

### 2. DAILY ACTIVITIES

Inconsistency between a treating physician's opinion and a plaintiff's daily activities can serve as a legitimate and specific reason to discount a treating physician's opinion. *Ghanim*, 763 F.3d at 1162. In order to prove the inconsistency, the ALJ must develop the record with specific detail in demonstrating how the daily activities are inconsistent with

the physician's opinion. *See Trevizo*, 871 F.3d at 676.

To the extent that the ALJ intended to discount the treating physicians' opinions on Meixner's reported activities, noting that Meixner could help renovate a house, ride a horse, and perform light household chores, she did not provide a clear and convincing basis for doing so. (AR at 26.) These activities, which include many of the same activities the ALJ used to discount Meixner's symptom testimony, have little bearing on work-related limitations or the ability to perform work on a regular and continuing basis. Relevant here, both treating physicians noted that Plaintiff could sit, stand, and walk intermittently between one to two hours each per day. (AR at 629; AR at 624.) The ALJ failed to explain how any of the activities were inconsistent with this physical assessment. Nor did the ALJ establish that Meixner's activities were performed at such frequency or in such a manner that they conflicted with the physicians' opinions.

The ALJ was not required to accept either opinion from the treating physicians, but she was required to assign them appropriate weight or give specific and legitimate reasons for rejecting them supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830 (internal quotation omitted). The ALJ erred in discounting the treating physicians' opinions without citing specific and legitimate reasons.

### C. CREDIT-AS-TRUE RULE

"The decision whether to remand a case for additional evidence, or simply award benefits[,] is within the discretion of the court." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017 *quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion…").

In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit applies the "credit-as-true" standard when the following requirements are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would

serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*. 759 F.3d 995, 1021 (9th Cir. 2014) If all requirements are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.*

Here, Judge Kimmins considered whether the Ninth Circuit's credit-as-true rule was met, explaining:

> The Court concluded that the first requirement has been satisfied, because the ALJ rejected Meixner's symptom testimony and the opinions of Drs. Coull and Bessette without legally valid reasons. Second, there are no outstanding issues to be resolved. Defendant disagrees, citing conflicts in the record between the opinions of various physicians as well as between Plaintiff's testimony and physician opinions. The ALJ reviewed these opinion variances and had an opportunity to resolve them. However, her resolution was not well-reasoned. The record needs no further development and Defendant does not argue otherwise. If the Court were to remand for further proceedings, it would be solely for the ALJ to reconsider evidence [s]he has already reviewed and rejected on a legally insufficient basis. A mulligan to re-evaluate the same evidence does not qualify as a useful purpose for a remand under the credit-as-true analysis. *Id.* at 1021-22.
>
> Next, the Court evaluates the outcome of the disability analysis if the opinions of Drs. Coull and Bessette and Meixner's symptom testimony are credited. Both doctors opined that Meixner would be off task at least 11% of the day and would miss four or more workdays per month. (AR 917-18, 924-25, 992-93, 1074-75, 1086-91.) Meixner stated that she was unable to focus for an eight-hour workday; would be unable to complete a full workday because of her need to nap; would be off task "a lot" of the time; and would miss work at least three days a week. (AR 57, 65-66, 68-69, 225.) The Vocational Expert testified that no work was available for a person that would regularly miss one or more days of work per month. (AR 75-77.) Similarly, no work was available for a person that would be off-task 10% or more per workday. (AR 75-77.) Crediting the testimony of the treating physicians and Meixner, the ALJ would be required to find Meixner disabled

>based on the vocational expert's testimony.
>After a thorough review of the entire record, the Court does not have serious doubts as to whether Meixner is disabled. Therefore, the Magistrate Judge recommends that the District Court remand this matter for the award of benefits.

(Doc. 29 at 15-16.)

The Commissioner argues that Judge Kimmins misapplied the credit-as-true rule's requirement, specifically by finding that no serious doubt exists as to whether Meixner is disabled in the face of purported inconsistencies in the record. (*See* Doc. 30 at 7.) First, the Commissioner argues that this case must be remanded for further proceedings because this case presents conflicting medical opinions, where treating physicians' opined severe limitations whereas non-treating physicians opined that Meixner could perform unskilled work. (Doc. 30 at 9.) Second, the Commissioner argues that the ALJ must resolve consistencies between Plaintiff's subjective complaints and the record. (Doc. 30 at 10.) As such, the Commissioner argues that if this Court finds the ALJ committed legal error, then the matter should be remanded for further proceedings to resolve the inconsistencies. (*Id.*)

Meixner responds, *inter alia*, that while the Commissioner argues for remand for further administrative proceedings, the Commissioner "gives no idea what this Court should order as to outstanding issues that an ALJ should resolve on remand, other than arguing that the ALJ decision was correct in the first place." (Doc. 33 at 10.) She urges that a remand in these circumstances—where remand would amount to a mulligan for the Commissioner—is inappropriate under *Garrison v. Colvin*. 759 F.3d at 1021. Meixner insists that here, as evidenced by Judge Kimmins' explicit findings, "the requirements of the Ninth Circuit's credit-as-true rule were met, and, because there were no outstanding issues that required resolution before a finding of disability and there was no basis for serious doubt as to Meixner's disability based on a holistic view of this record, this Court should order remand for award of disability benefits." (Doc. 33 at 3.)

The relevant factors here require the Court to remand for an award of benefits.

The record has been fully developed. The record contains medical opinions, sufficient medical evidence, testimony from Meixner, and VE testimony totaling hundreds

- 15 -

of pages. The record also reflects Meixner completed Function Reports in September 2016 and September 2017. Moreover, the Commissioner does not argue that the record is insufficient.

Further, the ALJ failed to provide legally sufficient reasons for rejecting evidence and gave improper weight to the opinions of Meixner's treating physicians. As Judge Kimmins found, the VE testified that a person with the functional limitations identified by Meixner's treating physicians is unable to work. Thus, the Court finds that crediting as true the opinions of Drs. Coull and Bessette results in a finding that Meixner is disabled.

Other cases in similar circumstances are consistent with such a finding. *See e.g., Rawa v. Colvin*, 672 Fed. App'x. 664, 669 (9th Cir. 2016) (applying the credit-as-true rule where "in light of the extensive medical record, the ALJ's error of law, the VE's testimony at the hearing, and the lack of any reason to doubt Rawa's credibility, we conclude that it would be contrary to both controlling case law and the purposes of the Social Security Act to conduct further proceedings and to cause further delay."); *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (applying credit-as-true rule where the treating physician's opinion was developed and substantiated by his long-term treatment relationship with the claimant and the VE specifically opined regarding the inability of an individual with the claimant's physical and intellectual limitation as described by the treating physician to sustain work.); *Roberts v. Acting Commr. of the Soc. Sec. Admin.*, 298 F. Supp. 3d 1232, 1241(D. Ariz. 2017) (applying credit-as-true rule where "Dr. Papke opined that Plaintiff would be off task greater than 21% of an 8-hour workday[…] [a]t the administrative hearing, the VE testified that Plaintiff could be off task '[o]nly about 10 percent' of a workday in order to maintain employment."); *Revels*, 874 F.3d at 669 (Applying credit-as-true rule where "[t]he ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Revels' treating rheumatologist and for rejecting Revels' testimony about her symptoms…If credited as true, Dr. Nolan's opinion establishes that Revels is disabled because the VE testified that someone with the limitations established by Dr. Nolan could not work."); *see also Valentine v. Commr. of Soc. Sec. Admin.*, 19-cv-05127-

PHX-JAT, 2020 WL 7022239, at *6 (D. Ariz. Nov. 30, 2020) (Applying credit-as-true rule where, "Defendant acknowledges that the ALJ erred in disregarding evidence from the treating physicians…" and finding that "[w]hen all evidence in the [r]ecord is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve and finds that there is no uncertainty that Plaintiff's severe mental impairment precludes her from all work.").

Further, the Commissioner does not raise any of the circumstances where the credit-as-true rule was found not to apply because the record required further development either by way of additional VE testimony, consideration of evidence not discussed by the ALJ, or the reconciliation of conflicting medical opinions of examining physicians. *See e.g., Hammock v. Bowen*, 879 F.2d 498, 504 (9th Cir. 1989) (declining to apply credit-as-true rule where there was no VE testimony regarding the claimant's ability to perform other work and finding such testimony necessary because the treating physician stated that the claimant could undertake sedentary activities); *Salazar v. Commr. of Soc. Sec. Admin.*, No. CV-19-00075-TUC-MSA, 2020 WL 2467334, at *6 (D. Ariz. May 12, 2020) (declining to apply credit-as-true rule where VE testimony was needed on the claimant's ability to perform work that existed in the national economy in light of the claimant's "educational characteristics"); *Dominguez v. Colvin*, 808 F.3d 403, 408-09 (9th Cir. 2015) (declining to apply credit-as-true rule where treating physician's opinion conflicted both with his treatment notes as well as with the opinion of a separate examining physician); *Burrell v. Colvin*, 775 F.3d 1133, 1142 (9th Cir. 2014) (declining to apply credit-as-true rule where evidence not discussed by the ALJ suggested that claimant may not be credible). The Commissioner urges that the ALJ's decision was correct for the reasons expressed in the ALJ's non-disability determination. In sum, the Commissioner fails to identify any evidence that the ALJ overlooked and should be considered on remand and instead argues that the ALJ should reweigh evidence she has already considered. This is not a proper basis for remand.

As discussed above, the ALJ committed harmful error in assigning reduced weight

to the opinions of Meixner's treating physicians. Crediting as true the opinions of Meixner's treating physicians results in a determination that she is unable to maintain employment. The Court further finds the credit-as-true elements have been met and remand for an award of benefits is warranted.

### IV.   ORDER

**IT IS ORDERED OVERRULING** the Commissioner's Objection to the Report and Recommendation (Doc. 30).

**IT IS FURTHER ORDERED ADOPTING IN FULL** the Report and Recommendation (Doc. 29), **REVERSING** the decision of the Commissioner and **REMANDING** this matter to the Commissioner for the immediate calculation and award of benefits.

**IT IS FURTHER ORDERED DIRECTING** the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 7th day of March, 2022.

_____
Honorable John C. Hinderaker
United States District Judge